Thank you, Your Honor. Good morning. May it please the Court. My name is Quentin Rhodes. I'm appearing on behalf of the appellant John Greytak and Tanglewood Partnerships. I'm going to read the issue for this case from a case that's been decided by the Montana Supreme Court, a case that came out in May of 2013. It reads as follows, quote... Which case is this? It's a case called Newman v. Scottsdale. Okay. And I'm quoting from paragraph 65. The issue there was, quote, Montana courts have long held that an insurance failure to comply with a notice condition in an insurance policy bars recovery under the policy, unquote. And that issue was posed by the insurance company in that case. And the insurance company argued that because it didn't receive timely notice, or it claimed it didn't receive timely notice, that it was not obligated under the policy of insurance. I mean, you're sort of jumping right into things, so I'm just going to jump right in as well. You're looking at paragraph 65. I'm looking at paragraph 66. The court there is talking about what it had done in Steedle. And I guess, you know, I mean, Steedle to me, why talk about prejudice there if it's not a requirement? And in paragraph 66, the court in Newman seems to distinguish Steedle precisely on the ground that prejudice was shown. So I'm kind of not sure why you're jumping in at this point. This strikes me as cutting against your position. Well, Your Honor, our position is that an insurance company must show prejudice in order to be excused from its obligation under the policy. And if it can't, or if it doesn't, or if there's no finding of prejudice, then it's obligated to indemnify and to cover the third-party beneficiary's claim. In Newman, in this particular case, the district court ruled based on Steedle that there's no need to show prejudice. Got it. In our view, and of course the district court did not have the benefit when it ruled in January of 2013 of this clarification by the Montana Supreme Court. But in May of 2013, the Montana Supreme Court made clear that if there was any doubt after Steedle that you had to show prejudice, it ruled that you do have to show prejudice. And remember, in the Steedle case, the plaintiff, the victim, the tort victim, knew about the insurance before it got the judgment. And it sued the defendant contractor. It knew about the insurance, sued the defendant contractor. The defendant contractor did not submit the claim to the insurance company. The defendant contractor did not appear and did not file an answer. And so the tort victim, who was the plaintiff, had a choice to make. He could seek, or they could seek a judgment by default, or they could inform the insurance company, look, we've sued, you're insured, you need to be aware of this so you have a chance to defend it if you choose to. And they took the former course. They sought a default judgment and waited 60 days until the ink was dry and the time for appeal had passed, and then approached the insurance company to say, look, you have to pay the seven-figure judgment we've got by default against you're insured, and we're telling you about it today after there's nothing you can do about it. And, of course, in Steedle, logically enough, the Montana Supreme Court said, no, that's not how it works. If you are seeking an insurance claim here against this judgment-proof defendant, you've got to tell the insurance company about it in time for the insurance company to step in if it chooses to and defend the case. And because you didn't, you prejudiced the insurance company's ability to hire counsel, investigate the claim, interview witnesses, formulate a strategy, and try the case if they think it needs to be tried. Because you prejudiced those abilities, there's no coverage. And, as I say, that makes perfect sense. But the mistake that the court made in this case, and, again, it didn't have the benefit of the Newman explanation, was that it did not require, it's a very narrow ruling, so it's a very narrow issue, it did not require the insurance company to address whether it was prejudiced. And the anomaly of that result is that you have this tort victim who is prejudiced, you have an insured who doesn't give notice to the insurance company. And the tort victim, because of that, is prejudiced, because then there's no indemnification of that victim's claim. The insurance company, on the other hand, is not prejudiced. And so you have a prejudiced tort victim who loses and a non-prejudiced insurance company who wins. Now, the insurance company got its policy, or its premiums, it got what it bargained for, but it should have to either make a choice here, either defend the case and indemnify or clearly say we're not going to and then bear whatever consequences flow from that. Can I ask you, I apologize for getting the parties flipped around. For some reason I thought the insurer was the appellant. You're obviously representing the claimant. So this is more of a softball question for you, but what are we supposed to do with that old Ninth Circuit case we've got that just sort of said, you know, that learned district judge in Montana, he must know better than us, we're just going to defer to his judgment that prejudice is required. Well, I think that the Newman case clarifies that for everyone. I think that, you know, this court doesn't have to guess at or reason its way to what it thinks the Montana Supreme Court would do if faced with the precise question. I think the Newman case makes that perfectly clear, that unless there's a showing of prejudice, then there's not an excuse for the obligation. Now, there could be a showing of prejudice, and Steedle is a perfect example of how an insurance company can be prejudiced by a lack of notice, but the flip side of that is the Newman case. You've got late notice, but you've got notice in time for them to make a choice whether they're going to defend, and in Newman they decided not to defend, or whether they are going to defend and then stand responsible for the obligation ultimately if, in fact, their insurance has a judgment entered against them. So the court, I think, you know, as I say, the district court didn't have the benefit, this court now has the benefit of the Newman decision, and if the court simply follows the Montana Supreme Court's direction in Newman, then the answer flows directly from that. One of the distinctions I wanted to make, or one of the discussions I want to have today is just a quick reiteration of the facts in our case. In our case, in November of 2010, our clients filed a claim against the insured in the form of a counterclaim after having been sued by the construction company for construction lien foreclosure. In April of 2011, some five months, six months after that counterclaim was filed, there was a settlement conference, and there was a resolution of most of the claims. The construction contractor's claims against the tort victim were released. The tort victim released its claims against the construction company that would have not been covered in the form of breach of contract, fraud, and the like. All that remained were on the counterclaim negligence and slander claims that potentially might be covered under the policy. The parties then agreed to lift the then-pending scheduling order and the then-pending trial date to allow the insured to submit that claim to the insurance company and give the insurance company a full and complete opportunity to come in and defend that case if it chose to. One of the characterizations in this case has been that there was some kind of settlement of the claims between the tort victim and the insured, and that we're asking for the insurance company to now pay a settlement based on a mediation conference in which they did not participate. And that is simply not the case. What we did was... Well, they didn't participate. They did not participate. So you got all the way to a major settlement conference without the insurance company. That's correct, Your Honor. And what happened was the insured did not submit the claim, and so the insurance company didn't know about it. Sure. But at the settlement conference, the insured did not agree to make itself obligated to pay a judgment that the insurance company would then be responsible for indemnification. All the parties agreed is that we're going to do a reset. We're going to start over with a new scheduling order, a new trial date, a new opportunity to defend, and then the next month, in May of 2011, the counterclaim was submitted to the insurance company. Didn't your client go in and get a judgment on this at some point? Yes, there was a judgment. Without the insurance company? That was about a year later, Your Honor. Yes, that's correct. And what happened was the insurance company was allowed to investigate the claim. It got the complete file from the insured. It got an opportunity to interview the principal for the insured, and the transcript shows that all the questions that were posed by the adjusters were answered, and there were no objections to any questions or no dissembling or refusal to answer. There was cooperation. And at that point, the insurance company decided to send a letter saying, well, there's no cooperation. But ultimately – Can I just – are you telling us all this to show that they weren't prejudiced? Yes. Okay. We're not ultimately going to resolve that question, right? Even if we agreed with you, we would just send it back and the district court would have to then confront that question? That's right. That's precisely right, and that's why I say the issue is narrow here. The district court did not deal with whether they were prejudiced or not or whether there was cooperation. So a remand would be what we would end up doing if we agreed with you. That's the most we could do, right? Yes, Your Honor. That's precisely our request is that you simply remand the case with the instruction that then the inquiry into prejudice and cooperation be had. Right. Okay. I will note in the record the question of that judgment did come up, and Judge Molloy made a ruling on that. It's at ER 8 and ER 9 where he dealt with the fact that there was this previous judgment and it had been vacated. And he didn't make a ruling on whether that was appropriate or not appropriate. He didn't hold that against either party. That wasn't a factor in his decision. He simply ruled that because there was late notice, regardless of prejudice, then the obligation to indemnify is satisfied. And so consequently we would ask the court to reverse that, what we view to be an error of law, and consistent with the Newman case and return it for further findings. Thank you. Good morning. If it pleases the court, Matt Hutchison on behalf of Atlantic Casualty Insurance Company, the appellee in this case. In watching the earlier arguments, I suspect I will not get too deep into my prepared comments. And so I would maybe like to try to hit the highlights. Newman would be one of them. That's correct, Your Honor. As I view this matter, there are three Montana Supreme Court cases that are the most pertinent and illustrative on the issue that is before us. They show the evolution, the more recent evolution. And it begins with Lee versus Great Divide Insurance Company, and that was a 2008 case. And the similarity of Lee to our case, I believe, is noteworthy. Because the appellant in this case is saying that Atlantic Casualty was not prejudiced because when it finally received the untimely notice, it still had the opportunity to conduct an investigation and defend, which it did, by the way. It both conducted an investigation and defended. And so in Lee, the same set of circumstances were present. When the insurance company finally received the notice of the claimant, Lee, judgment had not been entered. And so the notice in Lee was sent November 1, 2004, and the judgment was not entered until after a hearing in April of 2005. And so in Lee, the insurance company still had the opportunity to investigate and defend after it received the untimely notice. But the Montana Supreme Court in Lee held that since notice was late and omitted material information, that that alone was an independent basis to bar coverage. Quote, these omissions were a material breach of Lee's policy obligations and are independently sufficient to deny coverage to Lee. So that's very similar to the situation we have here. Appellant argues in his reply brief that the court in Lee found prejudice, but a review of the court's discussion of prejudice was merely the fact that the notice was late and omitted material information. There was nothing more. The court pointed to no particular matters that actually prejudiced the company's ability to defend. It was simply the fact that the notice requirement of the policy was not complied with. Well, but it's a little hard to say, because there it wasn't full notice. And so that was when they said, and I think their language was independently sufficient, was the timing and the incomplete notice. That's correct, Your Honor. So then if you take that circumstance, there's no suggestion here that we don't have complete notice, correct? There was incomplete notice in this case also, Your Honor, because the notice, once it was finally provided, contained no settlement documents. It contained nothing referencing the settlement. It did not contain the settlement agreement itself. Well, are you asking us to make a finding of prejudice? When you start telling us about those things, then I'm... No, Your Honor, no, I'm not. I'm equating the situation in Lee to this situation, where in Lee there was untimely notice and material information was omitted from the notice. The same circumstances existed here. And the court in Lee found that the untimely notice and the notice that omitted material information was sufficient to deny coverage. And the... I think this situation is illustrated most clearly by the dissent in Lee. I believe it was a 4-3 decision. And the dissent in Lee argued that the majority should require the insurance company to show actual prejudice, more so than what would be inherent in untimely notice or notice that lacks material information. The dissent argued that. But, of course, the majority found otherwise. It determined that a lack of compliance with the notice requirements was a condition preceding to coverage, and violation of that was an independent basis to find no coverage. And so we have Lee out there in 2008. And then next comes the Steedle decision, which is in 2011. Steedle v. Colony Insurance, 2011. And the court in Steedle commented and remarked at great length about the historical importance that Montana courts have applied to complying with the notice requirement under Montana law. Can I ask you, just while we're on this point, the question that I intended for you but asked your opponent instead. So why in Steedle should, if in fact the rule is that no prejudice need be shown, why does this court in Steedle even bother talking about the fact that there was prejudice there? That's what I don't get. Well, I believe the district court's decision in this case found that prejudice was not necessary to be shown, as the court decided in Lee. And then in Steedle, the court did not issue a holding which said insurance companies must show prejudice. That ruling is absent. And the Montana Supreme Court has shown that when it wants to, it will very plainly say by way of a holding that an insurance company must show prejudice, as it did in the Sorenson case, I think it's a 1996 case, where the issue involved uninsured and underinsured motorist coverage and subrogation. And the court very clearly said, quote, We hold that henceforth in Montana, to justify foreclosing an insured's right to indemnification from an otherwise applicable underinsured motorist insurance coverage, an insurer must establish it was prejudiced by the settlement of the claim by the insurer. And so given the existence of Lee in 2008, in which the dissent argued we must or should require insurance companies to show prejudice, more so than just a breach of the obligation to provide notice, if the Montana Supreme Court wanted to issue a clear ruling or a pronouncement that insurance companies under a commercial general liability policy must show prejudice. But let me try again, though. Everything you said makes perfect sense, but I'm still left wondering why then, what's the purpose of the discussion of prejudice in Steedle? I agree with you there's no clear holding, but if it were that cut and dried, then why even get into prejudice? So do you have some explanation? I mean, we're not mind readers, but do you have some explanation for why you think the court, nonetheless, went forward and talked about prejudice there? The only way I can, I think, respond to that situation, is that the court merely mentioned it in passing because I believe the underlying parties argued it at length the issue of prejudice. And the Steedle court merely noted with one sentence in its decision that there was prejudice, but the overwhelming majority of the decision involved the discussion of the importance of notice. See, I agree with you and your interpretation of Steedle, because that's how I read it, and I thought, in effect, they kind of threw in the prejudice kind of as an after statement to what I thought was the holding. At least I thought that until I read Newman. And then it seemed in Newman, paragraph 66, that they characterized Steedle, and then they say, colony argued the lack of notice of the claim severely prejudiced it. We observed because of the lack of notice, et cetera, et cetera. And then it goes on to say, and therefore suffered prejudice. So it seemed in a way that they possibly recharacterized their holding, and then I'm left wondering, well, what are we supposed to mean, take from Newman at that point? Thank you, Your Honor. Newman, the court, in its holding, did not reach the issue of prejudice. It did not reach it because it held that the basis for its holding was that the insurance company waived its right to complain about the lack of notice because it denied coverage, and it did not include as one of its reasons for denial improper notice, and it tried to come back later and do so. And the court decided the case on waiver. The Supreme Court ruled that the insurance company in Newman waived its right to complain about the late notice. And so it did discuss prejudice, but it wasn't a basis for its holding. It's as if it were dicta. It is. I completely agree with you on that, but unfortunately we're stuck in the position of trying to predict what the Montana Supreme Court would do. So when it drops little crumbs, you know, like little clues here and there, all we can do is try to piece them together. And I'm looking at the same language that Judge McEwen just read to you, and I'm left with the same feeling, like, well, if this is a clue as to their interpretation of Steedle, it seems to point against your position, right? That prejudice was noted. But it is not, it doesn't take the next step. It doesn't say in Montana insurance companies must show prejudice, like the court did in Sorenson. And with the holding in Lee out there in 2008, if the Montana Supreme Court wanted to issue a holding that for commercial general liability policies that the insurance company must show prejudice, those two cases were golden opportunities for the Montana Supreme Court to do so. Do you think that we should certify this question to the Montana State Supreme Court? That's a good question, Your Honor. I am reluctant to shoot from my hip. I really don't know how to answer that question, Your Honor. Because we do have, we get quite a few, as you know, insurance cases in the circuit on diversity jurisdiction. And in large part we try not to write opinions where we don't need to because we don't want to basically hogtie the district courts from figuring out what is the local law. But there could be enough ambiguity here. I mean, I realize in Newman the court says, well, I'm not going to address prejudice because I don't even need to get there. So prejudice isn't really on the table in Newman. But I suppose we have different interpretations of Steedle. Your colleague here has one interpretation, and you have another, and then we have Lee. So that's the reason I raise it is we, of course, can make our best judgment. That's one option. The other option would be to certify. I really don't know how to answer your question, Judge. It might be, I would defer to the court's judgment on that procedure. Okay, if you don't have an answer to that question, let me ask you a different question. Why shouldn't, given the state, muddled state of the law that we have now from the Montana Supreme Court, why shouldn't we just follow our decision in State Farm from 1971? That's the Murnion case. The Murnion case, again, began by pointing out that the Montana Supreme Courts have enforced the notice provisions as a condition proceed. And then three years go by in this particular case, and then the insurance company receives notice. The Murnion case said that these notice provisions are conditions proceed. Violation of them will bar coverage. However, in this particular case, the delay in the notice is excusable, is excusable. And so it was a factually specific case where the incident involved a minor traffic incident. It was a small dent that wasn't even repaired. The damage estimate was $94. The other driver said he was fine at the scene. There were no citations issued. And so three years later, the insured receives a claim from the other driver. And the insured then submitted the notice of the claim to the insurance company. And so my reading of Murnion is that the court began by pointing out that notice decisions are, notice provisions and policies are conditions proceed. However, this case, under the facts of this case, the delay in the notice was excusable. It went to a jury, and the jury answered a special interrogatory, which said that in this case, notice was given as soon as practicable. And so the Murnion case, and so on appeal, this court said we have looked at the underlying case, and we do not find the case to be clearly wrong. I believe that was the law. Well, what happened was the judge, I'm just looking at the language, who said prior to trial, the district court ruled that State Farm must show that it was somehow prejudiced by the delay in notification. And then later we said, geez, that judge is an experienced Montana lawyer, and we can't find any other state law that speaks to this question. And so, right, we basically can't say it's clearly wrong, so we're going to go with that rule. And that's the last that our court seems to have spoken to this issue in terms of Montana law, and that's why I say I read that as saying we've determined somehow that prejudice was required. We haven't gotten any crystal clear clarification one way or the other from the Montana Supreme Court since. Just as you said, it's kind of a muddle. And so if we're not going to certify it, then I don't know why we wouldn't just say, okay, we're just going to, until we get some better indication from the Montana Supreme Court, we're just going to stick with our decision in State Farm. With respect to Mernion, other than what I've said already, the Mernion case did not involve a casualty policy or a UIM or a UM policy. And the Montana courts have treated casualty policies differently than personal injury policies or UM, UIM policies. And so the matter of excuse, that was an affirmative defense that was raised in Mernion. And the issue of prejudice apparently was a factor in determining the affirmative defense of excuse, that the untimely notice was excused. In our case, there has not been an offer of excuse or an affirmative defense raised, an affirmative defense of excuse being raised, and no one, the insured or the appellant, has offered any excuse for the delay in notice. And so, again, I believe the Mernion case was, it involved a different type of policy. It was a factually specific case involving an affirmative defense of excuse that had been raised. Thank you. I think we have your argument in mind. Your Honor, I think it would be helpful in resolving the questions about this case, given the lack of complete clarity from the Montana Supreme Court, to think about the protective purpose of insurance to help resolve exactly how this should be decided. That is, the question of whether there has to be a showing of prejudice. In other words, are we going to allow the lack of notice to be a protection for the insurer who's received the premiums, or are we going to offer some protection to the victim who doesn't have control over whether the insured gives the premium? Timely notice. And in view of that protective purpose, then I think we look to the purpose of the notice. Now, why is there a requirement for notice? That's to allow the insurance company to come in and investigate and do what it needs to do to protect its interests. And in view of the purpose of the need for notice, if there's no prejudice, then that purpose is met. It was met in this case. There's no dispute that the insurance company got a chance to talk to, investigate, hire adjusters and otherwise proceed, and did offer a defense in the case. And so the purpose of the notice requirement is met. If we just allow the insurance company to practice by default, and it's like, well, we got our premiums and you didn't give us what is deemed to be timely, and that's going to be a case-by-case kind of adjudication, then we don't have to pay anything. Even if the purpose of the notice is met, as in this case. And so it seems with respect to the protective purpose of insurance and the purpose of the need for timely notice, if that is met, which it has been, we think in this case, then that should resolve the case in favor of coverage. Speaking to the Lee case, the Lee case made a finding that there was material omission from the notice. And materiality is a fact question. Now, that was decided on summary judgment because there was no dispute about the facts as to what was omitted and whether it was material. But that's still a fact question that wasn't addressed in this case because the court ruled it doesn't have to address the materiality. And that's the legal error that we think it made, and that's why we think it needs to be remanded to address the materiality. And finally, with regard to predicting what the Montana Supreme Court might do, there's also the case out there of State Farm Mutual Auto Insurance v. Gibson. And that case was the state court case that we sent to our brief that we supplied to the district court on the motion for Rule 7. And that's simply the state court judge, Judge Sherlock, who ruled that prejudice has to be shown by the insurance company. And so we think the precedent is that looking to trial court decisions is also helpful for this court. Do you think, though, that you agree that these auto insurance policies and others have been treated differently from general liability? I don't think there's a clear indication from the Montana Supreme Court with regard to that issue. I mean, clearly, the uninsured motorist question has been specifically addressed. But that question hasn't come down on all fours in any of these cases, and it hasn't been ruled on on all fours. And there's never been any guidance from the Montana Supreme Court that specifically said, we think these casualty insurance, there's a different protective purpose for casualty insurance, it's only property, and so we're not going to worry so much about it. It's never specifically said that. And so I don't think there's any more clear direction from that perspective than there is from the rest of the case. I'm going to repeat the question that we didn't really get a good answer to and ask you. Do you think we should certify this? Your Honor, I think that would be a reasonable way to deal with it. I think that this poses for the Montana Supreme Court, if you do this specific question, for it to answer one way or the other. The only concern that I have is the delay for the parties. We have fully briefed and argued the case. And I think that if you look at the combination between Steedle and Judge Sherlock's ruling and the direction of the majority of the cases now that have dealt with this, I think there's sufficient indication to indicate that the Supreme Court would follow that. We wouldn't have any sort of grounds to object and wouldn't object if that was the court's judgment. Thank you. The case just argued is submitted of Atlantic Casualty v. Gray-Tack. And thank you for your argument, your patience, and we're now adjourned.
judges: Rothstein, McKEOWN, WATFORD